IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| BRITNEY ODELL BATES, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 3:23-cv-359-HEH |
| HAROLD W. CLARKE, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION
(Granting Respondent's Motion to Dismiss)

Petitioner Britney Odell Bates ("Petitioner"), a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254 (the "§ 2254 Petition," ECF No. 1) on May 31, 2023, challenging his convictions in the Circuit Court for Stafford County (the "Circuit Court"). Respondent filed a Motion to Dismiss (the "Motion," ECF No. 9) on July 12, 2023. Petitioner has responded. (*See* ECF Nos. 10–17.) For the reasons that follow, the Motion will be granted.[1]

### I. Relevant Procedural History and Petitioner's Claim

Following a jury trial in the Circuit Court, Petitioner was convicted of hit and run, eluding, destruction of property, and driving with a revoked license. (Ex. 6 at 1, ECF No. 8-6.) The Circuit Court sentenced Petitioner to nine (9) years and six (6) months of incarceration. (*Id.*) Thereafter, Petitioner pursued unsuccessful appeals to the Court of

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling the quotations from the parties' submissions.

Court of Appeals of Virginia and the Supreme Court of Virginia. (*Id.*) The Court of Appeals of Virginia provided this brief summary of the facts pertaining to Petitioner's convictions:

> On February 3, 2019, Stafford County Sheriffs Deputy A.J. Layug was patrolling Kings Highway when he observed a red Saturn vehicle traveling in the opposite direction at seventy-three miles per hour in a posted fifty-five mile-per-hour zone. Deputy Layug activated his lights to initiate a traffic stop and made a U-turn, but the vehicle continued to drive at a slow rate of speed. The vehicle eventually pulled over after the deputy activated his siren "a few times."
>     Appellant told Deputy Layug that his driver's license was suspended and that he was on his way to get a restricted one. After Deputy Layug returned to his patrol car and was preparing a summons, appellant sped away onto Kings Highway. Video footage of the incident captured by Deputy Layug's dash cam recorded appellant's conduct. Almost immediately after driving away, appellant weaved through traffic and entered a closed traffic lane in a construction zone, knocking over a construction barrel and driving through debris. Appellant repeatedly wove in and out of traffic throughout the pursuit and disregarded multiple red lights, including at busy intersections, and drove over double yellow lines on the highway. He also struck a citizen's vehicle and fled.
>     Appellant entered Interstate 95, continued to weave through traffic, and drove on both shoulders of the interstate. The pursuit reached speeds over 100 miles per hour. Appellant suddenly exited the interstate, cutting off vehicles in the process, and apparently lost control of his vehicle on the exit ramp. When Deputy Layug reached appellant on the exit ramp, appellant's vehicle had come to a stop in the median and was facing the deputy's vehicle head-on. Appellant put his car in reverse and struck Deputy Layug's patrol car while attempting to drive away. At trial, Deputy Layug positively identified appellant as the driver.

(Ex. 3 at 42, ECF No. 8-3.)

On June 30, 2022, Petitioner filed a petition for a writ of habeas corpus with the Supreme Court of Virginia wherein he raised numerous grounds for relief. (Ex. 5 at 1– 18, ECF No. 8-5.) On March 31, 2023, the Supreme Court of Virginia dismissed Petitioner's petition for a writ of habeas corpus. (Ex. 6 at 1.)

2

Thereafter, Petitioner filed his present § 2254 Petition. Many of the claims raised in the § 2254 Petition are nearly identical to those claims previously rejected by the Supreme Court of Virginia on state habeas. In his § 2254 Petition, Petitioner contends that he is entitled to relief on the following grounds:

Claim 1     "The state court erred when it failed to find that trial counsel was ineffective under the Sixth Amendment of the United States Constitution for failing to object to the jury venire allowing a 'petit jury' to be selected. Furthermore, the state court erred when it failed to find that appellate counsel was ineffective under the Sixth Amendment of the United States Constitution for failing to challenge the jury venire on appeal." (§ 2254 Pet. at 12.)

Claim 2     "The state court erred when it failed to find that trial counsel and appellate counsel were ineffective under the Sixth Amendment of the United States Constitution for failing to object to or appeal the unwarranted testimony of a 'White Law Enforcement' Juror." (*Id.* at 14.)

Claim 3     "The state court erred when it failed to find that trial counsel was ineffective under the Sixth Amendment for not motioning the Court to suppress the 'suggestive' photo identification. Appellate Counsel was ineffective under the Sixth Amendment for not challenging the 'misidentification' on direct appeal." (*Id.* at 15.)

Claim 4     "The state court erred when it failed to find that trial counsel was ineffective under the Sixth Amendment by not calling [an] expert witness on cross-race effect or own-race bias in relation[] to witness identification, and for not asking for a jury instruction on cross-race effect or own-race bias." (*Id.* at 18.)

Claim 5     "The state court erred when it failed to find that trial counsel was ineffective under the Sixth Amendment by not filing a motion in limine to exclude the testimony of Officer Layug based on the 'totality of the circumstances' as outlined in *Neil v. Biggers*, 93 S. Ct 375, based on the 'suggestive' identification of [Petitioner]." (*Id.* at 22.)

Claim 6     "The state court erred when it failed to find that both trial counsel and appellate counsel [were] ineffective under the Sixth Amendment when not addressing the fact that photos were taken of [Petitioner],

3

|          | |
|----------|---|
|          | while he was incarcerated, and shown to Officer Layug, without the presence of counsel as required under *United States v. Wade*, 388 U.S. 218, and *Stovall v. Denno*, 388 U.S. 293." (*Id.* at 23.) |
| Claim 7  | "The state court erred when it failed to find that appellate counsel was ineffective under the Sixth Amendment when he did not challenge [Petitioner's] conviction for eluding, hit and run, and driving on a suspended license." (*Id.* at 25.) |
| Claim 8  | "The state court erred when it failed to find that trial counsel was ineffective under the Sixth Amendment of the United States Constitution for failing to interview and call Juanita Bates as a witness." (*Id.* at 26.) |
| Claim 9  | "The state court erred when it failed to find that trial counsel was ineffective under the Sixth Amendment of the United States Constitution for failing to address misidentification in [Petitioner's] appeal." (*Id.* at 27.) |

## II. Applicable Constraints Upon Federal Habeas Review

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Given the foregoing restrictions, the findings of the Supreme Court of Virginia figure prominently in this Court's opinion.

## III. Analysis

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

The vast majority of Petitioner's claims contend that counsel performed deficiently in failing to challenge the prosecution's identification of him as the perpetrator who committed the offenses for which he stands convicted. It is appropriate to address the identification-related claims prior to addressing Petitioner's remaining claims. As explained below, although counsel did their best to cast doubt on the assertion that Petitioner was the perpetrator of charged crimes, the evidence left absolutely no room for reasonable doubt.

### A. Identification Related Claims

Petitioner's first identification related claim is Claim 2, where he complains about counsel's failure to challenge a juror's remark during his trial. In rejecting this claim on state habeas, the Supreme Court of Virginia aptly summarized the evidence of Petitioner's guilt, why counsel's performance was reasonable, and why Petitioner could not demonstrate prejudice. Specifically, the Supreme Court of Virginia stated:

> The record, including the trial transcript, demonstrates that on February 3, 2019, Deputy A.J. Layug stopped a Saturn coupe, driven by [P]etitioner, for speeding. When Deputy Layug approached [P]etitioner, he noticed [P]etitioner's left hand did not appear to be fully formed. The deputy also noticed what appeared to be a discoloration, or a darker patch of skin, on the left side of [P]etitioner's neck, although the officer thought that could simply have been from his neck being bent and wrinkled. The officer admitted he was focused on [P]etitioner's face and hands and could not be certain about the discoloration on his neck.
> Deputy Layug asked [P]etitioner for his license and registration, and [P]etitioner admitted his driver's license was suspended. Petitioner then gave the officer a Maryland registration for a Saturn coupe in the name of Miles Garrett and a false social security number.
> Deputy Layug returned to his patrol car to write the summons, and [P]etitioner accelerated away from the scene, weaving through traffic and striking a construction barrel in a road work area. During the pursuit, [P]etitioner continued weaving in and out of traffic, drove through several

6

> red lights, crossed the double-yellow line, and struck another person's car before entering Interstate 95 and reaching speeds exceeding 100 miles per hour. Petitioner crossed several travel lanes before he abruptly moved back to the right lane and took an exit. Petitioner momentarily lost control of the car, and it came to a stop on the exit ramp, where Layug caught up with him. Attempting to flee once again, [P]etitioner put the Saturn in reverse and struck Layug's patrol car, rendering it inoperable.
>   Deputy Layug subsequently checked the number of the license plate he had seen on the Saturn, checked the driver's license of the registered owner of the plate, and found [P]etitioner's DMV photograph. Based on the license plate and the photograph, Deputy Layug obtained warrants for [P]etitioner's arrest, which were executed two days later.
>   After the Commonwealth rested, [P]etitioner's counsel asked to be permitted to show the jury the left side of [P]etitioner's neck. The court permitted it and [P]etitioner stood in front of the jury. Counsel and the trial judge asked the jury if they were able to see, to which one juror responded, responded "[t]here is kind of a shadow there." In response, counsel asked [P]etitioner to turn. Under the circumstances, it appears counsel reasonably perceived the juror's remark to be an unobjectionable response to the inquiry about whether the jury could see, and not any remark, or testimony, as to the condition of [P]etitioner's neck. Thus, [P]etitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Ex. 6 at 4–5.) Given these circumstances, Petitioner fails to demonstrate that trial counsel or appellate counsel performed deficiently, or that he was prejudiced, by failing to challenge the juror's comment. Accordingly, Claim 2 will be dismissed.

In Claim 3, Petitioner faults counsel for not challenging what he contends was an overly suggestive photo identification of him. Petitioner asserts that Deputy Layug was improperly shown a single photograph from which he identified Petitioner as the perpetrator. In rejecting this claim, the Supreme Court of Virginia stated:

> The Court holds claim (3)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The "due process check on the admission of eyewitness identification" applies only when "the police have arranged suggestive circumstances leading the witness

7

> to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 234 (2012). The record, including the trial transcript, demonstrates that Deputy Layug found [P]etitioner's photograph while investigating the identity of the owner of the license plate of the Saturn and recognized [P]etitioner. Counsel could reasonably have determined this did not constitute a "suggestive circumstance" arranged by the police and that any argument to the contrary would have been futile. . . . Thus, [P]etitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(*Id.* at 6.) As noted above, Deputy Layug checked the DMV record for the license plate of the Saturn he had pulled over. The license plate was registered to Petitioner and the DMV record contained Petitioner's photograph. Trial and appellate counsel reasonably eschewed the frivolous challenges Petitioner urges here. Thus, Claim 3 will be dismissed because Petitioner fails to demonstrate deficiency of counsel or prejudice.

In Claim 4, Petitioner faults counsel for failing to call an expert on cross-race identification and failing to seek a jury instruction with respect to cross-race identification or own-race bias. In rejecting one aspect of this claim, the Supreme Court of Virginia stated:

> The Court holds this claim . . . satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner has failed to proffer the name of any witness counsel could [have] called on the subject of "cross-race effect or own-race bias," or to proffer, by affidavit or otherwise, the substance of the witness' potential testimony. *See Muhammad v. Warden*, 274 Va. 3, 19 (2013) (rejecting petitioner's claim that counsel was ineffective for failing to consult with or request expert assistance where petitioner "failed to proffer the names of any experts he contend[ed] counsel should have consulted and fail[ed] to proffer any expert affidavits to demonstrate what information these experts could have provided at trial"). Thus, [P]etitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

8

(*Id.* at 6–7 (second and third alterations in original).) Furthermore, with respect to the issue of a jury instruction on cross-race identification or own-race bias, Petitioner fails to demonstrate that Virginia courts regularly provide such instructions. Moreover, given the overwhelming evidence demonstrating that Petitioner was the perpetrator discussed previously, and hereafter, Petitioner fails to demonstrate that he was prejudiced by the omission of the instructions he seeks here. Accordingly, Claim 4 will be dismissed because Petitioner fails to demonstrate deficiency of counsel or prejudice.

In Claim 5, Petitioner contends "trial counsel was ineffective . . . by not filing a motion in limine to exclude the testimony of Officer Layug based on the 'totality of the circumstances' as outlined in *Neil v. Biggers*, 93 S. Ct 375, based on the 'suggestive' identification of [Petitioner]." (§ 2254 Pet. at 22.) Relatedly, in Claim 6, Petitioner asserts counsel performed deficiently for "not addressing the fact that photos were taken of [Petitioner], while he was incarcerated, and shown to Officer Layug, without the presence of counsel as required under *United States v. Wade*, 388 U.S. 218, and *Stovall v. Denno*, 388 U.S. 293." (*Id.* at 23.) In dismissing the aspects of these claims Petitioner advanced on state habeas, the Supreme Court of Virginia stated:

> Petitioner alleges the Commonwealth obtained a warrant to take [P]etitioner's photograph after he was indicted and that these photographs were shown to Deputy Layug to bolster his ability to identify [P]etitioner. Petitioner contends he was entitled to have counsel present when the deputy was shown the photographs. Petitioner further contend[s] counsel should have raised this issue on appeal.
> The Court holds claims (5)(A) and (B) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript and the Commonwealth's trial exhibits, demonstrates Detective W.J. McWaters obtained a search warrant to take photographs of [P]etitioner's hands, face,

9

> and person. McWaters took the photographs, which were admitted at trial and which showed a congenital malformation in [P]etitioner's left hand. At trial, Deputy Layug identified [P]etitioner as the individual shown in the photographs. However, [P]etitioner proffers no support for his claim that the photographs were shown to Deputy Layug prior to trial or that any post-indictment photo array was conducted without counsel's presence to which counsel should have objected. Moreover, the selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Thus, [P]etitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Ex. 6 at 8 (citation omitted).) Petitioner simply fails to demonstrate any reasonable basis for counsel to challenge Deputy Layug's identification of him as unduly suggestive or otherwise improper. Moreover, the totality of the evidence leaves no doubt that Petitioner was the driver of the vehicle.

Deputy Layug had a significant opportunity to view Petitioner at the initial traffic stop. Deputy Layug noticed that the driver had a hand that was not fully formed. Petitioner's hand is not fully formed. The driver acknowledged that his license had been suspended. Petitioner's license had been suspended at the time of the stop. The driver provided Deputy Layug with a social security number. That social security number matched Petitioner's social security number, except for one digit. Deputy Layug ran the license plate for the car that he pulled over. That license plate was associated with Petitioner and pulled up Petitioner's photograph on DMV records. Deputy Layug immediately recognized that DMV photograph as the driver of the vehicle.

At trial, Deputy Layug was certain in his identification of Petitioner as the driver

10

of the vehicle.[2] Accordingly, Petitioner fails to demonstrate that trial or appellate counsel were deficient, or that he was prejudiced by counsel's failure to press the issues he urges here. Thus, Claims 5 and 6 will be dismissed.

In Claim 7, Petitioner faults appellate counsel for failing to challenge his convictions for eluding, hit and run, and driving on suspended license on the ground that he was misidentified as the driver. Relatedly, in Claim 9, Petitioner contends that "trial counsel was ineffective under the Sixth Amendment of the United States Constitution for failing to address misidentification in [Petitioner's] appeal." (§ 2254 Pet. at 27.) These claims lack merit for the reasons stated above. Petitioner fails to demonstrate deficiency or prejudice. Claims 7 and 9 will be dismissed.

In Claim 8, Petitioner contends counsel performed deficiently for failing to interview and call his grandmother, Juanita Bates ("Ms. Bates"), as an alibi witness. Petitioner now contends that he told counsel that Ms. Bates could serve as his alibi witness. However, in his state habeas petition, Petitioner failed to state that he had told counsel that Ms. Bates could serve as his alibi witness. (Ex. 5 at 15–16.) In dismissing this claim, the Supreme Court of Virginia stated:

> The record, including the trial transcript and [Ms. Bate's] affidavit, demonstrates that [Ms. Bate's] affidavit is dated three months after [P]etitioner's trial. Petitioner proffers no other grounds upon which counsel could reasonably have known [Ms. Bates] might potentially have been a beneficial witness at [P]etitioner's trial. Thus, [P]etitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

---

[2] Trial counsel explored the issue of whether Petitioner had any discoloration on his neck as Deputy Layug initially stated in his description of the driver.

(Ex. 6 at 9.) Petitioner now contends that he told counsel that Ms. Bates could serve as his alibi witness.[3] Ms. Bates asserts that, around that time the initial traffic stop occurred, she spoke to Petitioner, who was living with her at the time and present in her home. (Ex. 5 at 36.) Given the abundant evidence of Petitioner's guilt, there is no reasonable possibility Ms. Bates's sparse statement could have altered the result of the trial. Accordingly, Claim 8 will be dismissed because Petitioner fails to demonstrate prejudice.

### B. Jury Composition Claim

In Claim 1, Petitioner contends that counsel performed deficiently by failing to challenge the composition of the jury venire. Petitioner asserts:

> In this case, jurors were selected from the affluent parts of the county, while excluding the parts of the county where the defendant lived. This produced a "petit jury" consisting of 11 whites and 1 black. All jurors came from upper middle class neighborhoods, while defendant lived in a lower middle class neighborhood. Over 50% of the jury was former law enforcement, some current law enforcement, some related to law enforcement. This jury in no way resembles the make-up of the county as a whole.

(§ 2254 Pet. ¶ 32.)

In rejecting this claim, the Supreme Court of Virginia stated;

> The Court holds claim (l)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) (citation omitted). However, to establish a prima facia violation of the fair-cross section requirement, a defendant "must show:

---

[3] Respondent Harold W. Clarke provides a chronology of how Petitioner's allegation regarding this alibi witness has evolved over the course of the trial and habeas proceedings. (*See, e.g.*, Br. in Supp. at 38–39, ECF No. 8.)

(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id.* at 319 (citation and internal quotation marks omitted).

Petitioner proffers no facts from which counsel could reasonably have argued the composition of the venire in his case was due to systematic exclusion of a distinctive group in the jury-selection process. Moreover, to the extent [P]etitioner alleges counsel should have moved to strike any member of the jury with some relation to a law enforcement officer, mere relation to an officer is not a per se disqualification. *See Stewart v. Commonwealth*, 245 Va. 222, 235 (1993) (juror's relationship to police officer alone did not establish basis for disqualification where potential juror stated she could be fair and impartial); *see also Cox v. Treadway*, 75 F.3d 230, 239 (6th Cir. 1996) (rejecting claim that family relationship of juror with law enforcement agents was basis for causal challenge due to implied bias); *United States v. Beasley*, 48 F.3d 262, 267 (7th Cir. 1995) (it was not an abuse of discretion for trial judge to deny causal challenge to juror whose son and brother were law enforcement employees); *Brogdon v. Butler*, 838 F.2d 776, 778 n.1 (5th Cir. 1988) (it was not an abuse of discretion to deny causal challenge to juror whose husband was a law enforcement officer); *United States v. Caldwell*, 543 F.2d 1333, 1347 (D.C. Cir. 1974) ("[A]bsent a specific showing of bias, [even] a defendant accused of murdering a police officer is not entitled to a jury free of policemen's relatives."). Counsel was not ineffective for failing to make a contrary argument. *See Correll v. Commonwealth*, 232 Va. 454, 470 (1987) (counsel not ineffective for failing to make a meritless objection). Thus, [P]etitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

In claim (1)(C), [P]etitioner contends he was denied the effective assistance of appellate counsel because counsel failed to challenge the composition of the venire on appeal.

The Court holds claim (1)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Thus, [P]etitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

13

(Ex. 6 at 2–3 (second alteration in original)).) Petitioner fails to demonstrate counsel performed deficiently by failing to raise the challenges to the petit jury that he urges. *See United States v. O'Lear*, 90 F.4th 519, 525 (6th Cir. 2024) ("To be clear, the Sixth Amendment does *not* require that the assembled jury *itself* (often referred to as the 'petit' jury) represent a fair cross section of the community." (citations omitted)); *Marshall v. Chicago*, 762 F.3d 573, 578 (7th Cir. 2014) ("It is established that a litigant has no right to a petit jury which contains members of his race or which fairly represents a cross-section of the community." (citations omitted)). Claim 1 will be dismissed because Petitioner fails to demonstrate deficiency of counsel or prejudice.

## IV. Conclusion

Petitioner has moved for discovery, the appointment of counsel, an evidentiary hearing, and for an expansion of the record. (*See* ECF Nos. 10–12, 16.)

Unlike other civil litigants, a § 2254 habeas petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Petitioner must show good cause in order to conduct discovery. Rules Governing Section 2254 Cases, Rule 6(a). "A showing of good cause must include specific allegations suggesting that the petitioner will be able to demonstrate that he is entitled to habeas corpus relief." *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009) (citations omitted). Petitioner fails to make this showing. Accordingly, his Motion for Discovery (ECF No. 10) will be denied. Further, Petitioner fails to demonstrate that he is entitled to the appointment of counsel, an evidentiary hearing, or an expansion of the record. Accordingly, Petitioner's remaining motions (ECF Nos. 11, 12, 16) will be denied.

14

Respondent's Motion (ECF No. 9) will be granted. Petitioner's claims and the action will be dismissed. A certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

                                       /s/  
                             Henry E. Hudson  
                             Senior United States District Judge

Date: March 26, 2024  
Richmond, Virginia